UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY GLEN MILLER,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

                              /

Case No.  1:15-CV-0638

HON. JANET T. NEFF

**OPINION**

       This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Jerry Miller seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

**STANDARD OF REVIEW**

       The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who

is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 52 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.53, 166.)  He successfully completed high school, and was previously employed as a mobile home installer and house builder.  (PageID.78, 105.)  Plaintiff applied for benefits on September 8, 2009, alleging that he had been disabled since March 20, 2009, due to problems associated with his lower back.  (PageID.166, 386, 390.)  Plaintiff's application was denied on November 20, 2009, after which time he requested a hearing before an ALJ.  (PageID.195–200.)

After an administrative hearing resulting in an unfavorable decision, the Appeals Council remanded the case on June 14, 2013, for further consideration. (PageID.171–92.) On remand, ALJ Michael Condon held an administrative hearing on November 4, 2013, at which both Plaintiff and a vocational expert (VE) testified. (PageID.74–117.) In a written decision dated December 13, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.53–73.) On April 27, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.31–36.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on March 31, 2010. (PageID.57). Accordingly, to be eligible for Title II benefits, Plaintiff must establish that he became disabled prior to the expiration of his insured status.[1] *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[1] As the Commissioner points out, there is some confusion regarding this date. In some instances, the insured date is listed as occurring in March 2009. (PageID.386.) The Court concludes the insured date found by the ALJ, a date more favorable to Plaintiff, is correct. (PageID.57.)

[2] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Condon determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from March 20, 2009 (his alleged onset date) through March 31, 2010 (his date last insured). (PageID.59.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) lumbar facet syndrome; (3) lower lumbar facet arthropathy; and (4) left greater trochanteric bursitis. (PageID.59.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.59–60.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

---

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

4

> to lift and carry 20 pounds occasionally and 10 pounds frequently; to stand and walk for 6 hours total and sit for 6 hours total in an 8-hour workday; to occasionally climb ramps and stairs, balance, stoop and crouch; however, he was unable to kneel or crawl and could never climb ladders, ropes and scaffolds; he could have no concentrated exposure to vibration; and was further limited in that he could not operate leg or foot controls.

(PageID.60.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (PageID.65.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 23,000 jobs within the state of Michigan in the positions of inspector / packager, assembler, and cashier that an individual similar to Plaintiff could perform. (PageID.66, 108.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from March 20, 2009, through March 31, 2010, the date last insured. (PageID.67.)

## DISCUSSION

On September 30, 2015, the Court filed a Notice in this case regarding the filing of briefs. That Notice, in part, stated that "Plaintiff's initial brief must contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand." (PageID.780.) While Plaintiff's brief does contain headings setting forth the general arguments made in his brief, it does not do so in the requisite specificity. Accordingly the Court must frame the issues for review. The Court finds Plaintiff has presented the following claims of error:

> 1. The ALJ failed to properly weigh the opinions of his treating physicians, Dr. Eric Houchin and Dr. Kenneth Franklin;

2. The ALJ erred in failing to discuss the opinion of Dr. Tama Abel, a consultative examiner;

3. The ALJ failed to provide a narrative discussion of the RFC, in violation of SSR 96-8p; and

4. The ALJ failed to properly evaluate Plaintiff's credibility.

The Court will discuss the issues below.

**1.**

On January 14, 2010, Dr. Eric Houchin, M.D., wrote a letter in which he stated Plaintiff had advanced degenerative disc disease of the lumbar spine. Dr. Houchin opined that this condition would require that Plaintiff be able to frequently sit or stand at will, as well as to be able to lay down several times a day. Dr. Houchin concluded that he considered Plaintiff "disabled at this point." (PageID.658.). On February 19, 2010, Dr. Houchin also completed a worksheet regarding limitations associated with Plaintiff's lumbar spine. (PageID.520–26.) The worksheet consisted of check boxes and spaces for the physician to provide a few words in support of his opinion. Dr. Houchin stated that in an eight-hour workday, Plaintiff could only sit for an hour or less, and could stand or walk for three hours. (PageID.522.) Plaintiff would need to change positions at will between sitting and standing or walking. He also needed to be able to take unscheduled breaks approximately every thirty minutes, and would have to rest for thirty minutes before returning to work. (PageID.523, 525.) Plaintiff could only occasionally lift and carry up to ten pound weights, and could never lift heavier weights. (PageID.523.) Plaintiff's pain would periodically interfere with his attention and concentration, and he was only capable of tolerating low stress work environments. (PageID.524.) Plaintiff would further have good days and bad days, and could be expected to miss work more than three times a month. Finally, Dr. Houchin opined that Plaintiff would need to avoid heights, and could never perform any pushing, pulling, kneeling,

bending, or stooping. (PageID.525.) On September 22, 2011, Dr. Ken Franklin filled out an identical form, and offered similar opinions. (PageID.588–94.) On August 22, 2013, Dr. Franklin again provided an opinion that mirrored the above limitations. (PageID.702–09.) The ALJ gave Dr. Houchin's opinion "reduced weight" noting as follows:

> The doctor's opinions here that the claimant had to lie down several times a day are not well supported in light of the claimant's actual activity level as he himself testified to . . . . Here the doctor did not have the benefit of the hearing testimony and the limitations that he suggests for the claimant are not consistent with the record as a whole. These opinions are not supported by the claimant's longitudinal medical evidence of record, which contains generally mild diagnostic findings. Further, these opinions are internally inconsistent with Dr. Houchin's own progress notes, showing generally normal to mild musculoskeletal findings, a normal gait, a full range of motion and a treatment recommendation limited to weight loss and abdominal muscle strengthening. The undersigned notes the medical evidence of record shows the claimant did not receive any medical care from this physician through the date last insured, after Dr. Houchin provided this opinion. The lack of follow up medical care through the date last insured is consistent with generally mild findings within the medical evidence of record but is inconsistent with the medical opinion at issue. As a result, the undersigned affords these opinions reduced weight.

(PageID.64.) The ALJ also gave reduced weight to Dr. Franklin's opinion, noting that the doctor's opinion was similar to that of Dr. Houchin's, and that the doctor's opinion was "inconsistent with the generally mild findings contained with the claimant's longitudinal medical evidence of record, including clinical and diagnostic findings, relatively normal exams and conservative treatment with minimal medication from his primary care physicians." (PageID.65.) Plaintiff claims the ALJ failed to properly evaluate these opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his

7

medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart,* 710 F.3d at 375–76 (quoting 20 C.F.R. § 404.1527). It appears undisputed Dr. Houchin and Dr. Franklin qualify as treating physicians.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

8

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007). The Court finds the ALJ provided good reasons, supported by substantial evidence, for giving the doctors' opinions reduced weight. As the ALJ noted, the extreme limitations Dr. Houchin and Dr. Franklin found were inconsistent with Plaintiff's activities of daily living as well as the doctors' treatment notes. (PageID.64–65.)

During a visit with Family Doctors of Vicksburg in April of 2009, Plaintiff told his physician he had recently played nine holes of golf. (PageID.480.) He apparently continued to be able to do so through his date last insured, as a May 4, 2011, treatment note from Bronson Rehabilitation Services indicated that he had recently completed nine holes of golf and it "did not feel as bad as before." (PageID.630.) On his function report, Plaintiff stated that was able to hunt during the season, about four months of the year, and golfed during the summer, but that he wasn't able to hunt for as long and as often as he used to. (PageID.401.) A typical day would be spent eating breakfast, watching the news, feeding pets, getting the mail, golfing for exercise on some days, eating lunch, going to appointments, hunting during the season, running errands as needed, visiting family, eating dinner, and doing stretch therapy. (PageID.398.) He had no issues with his

9

personal care, and was able to prepare his own meals using a stove, microwave, or grill. (PageID.399.) Plaintiff also stated he could do the laundry and dishes, take out the trash and mow the lawn, but needed help carrying the clothes basket down the stairs. (PageID.399.) He further could walk for five miles before needing to stop and rest. (PageID.402.)

Plaintiff argues, however, that his activities of daily living are hardly probative of what he is able to do in a competitive work environment for a full workweek. (PageID.800.) Plaintiff relies on *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2009). In *Rogers*, the Sixth Circuit found that "somewhat minimal daily functions," such as driving, cleaning an apartment, caring for pets, doing laundry, doing stretches, reading, and watching the news, were "not comparable to typical work activities." *Id.* Typical work activities are "the abilities and aptitudes necessary to do most jobs," including among other things "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Id.* at 248 n.6; 20 C.F.R. § 404.1521(b). The activities that Plaintiff himself admitted to, however, are hardly the minimal activities at issue in *Rogers*, and are entirely inconsistent with the extreme restrictions offered by the doctor. It was entirely appropriate for the ALJ to consider these activities in assessing Dr. Houchin's opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); 20 C.F.R. § 404.1529(a) & (c)(3)(i) (listing "daily activities" as among the "[f]actors relevant to your symptoms" and how they "affect your ability to work"); *see also, Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (including the plaintiff's daily activities as among the "good reasons" for discounting the treating physician's opinion).

Moreover, the ALJ noted that the opinion was inconsistent with the doctors' own progress notes. For example on January 14, 2010, Plaintiff visited Dr. Houchin complaining of back

pain. On exam, Plaintiff had a normal gait and station, as well as a free range of motion regarding his upper and lower extremities. Plaintiff was started on Lyrica.[3] (PageID.621.) A month later, on February 19, 2010, Plaintiff complained of muscle pain, but did not have any joint or leg pain. (PageID.616.) Plaintiff was only encouraged to lose weight and work on abdominal strengthening. (PageID.617.) Similarly, Dr. Franklin's treatment notes found a normal gait, negative straight leg raising test, and normal range of motion. (PageID.571, 727.) In sum, the ALJ provided good reasons, supported by substantial evidence, for discounting the doctor's opinion.

Finally, the ALJ did not err regarding the factors set forth in 20 C.F.R. § 404.1527. While Plaintiff would apparently have the ALJ address each factor individually, Plaintiff points to no case law requiring an ALJ to perform such an analysis. Under section 404.1527(c), the ALJ is only required to "consider" the factors. The regulation does not require a "factor-by-factor" analysis. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804–05 (6th Cir. 2011); *see also Kostovski–Talevska v. Comm'r of Soc. Sec.*, No. 5:13–cv–655, 2014 WL 2213077, at *9 (N.D. Ohio May 28, 2014) (collecting cases); *Mayfield v. Comm'r of Soc. Sec.*, No. 1:12–cv–912, 2014 WL 1341923, at *11 (W.D. Mich. Mar. 31, 2014); *Owens v. Comm'r of Soc. Sec.*, No. 1:12–cv–47, 2013 WL 1304470, at *2 (W.D. Mich. Mar. 28, 2013). The record demonstrates that the ALJ recognized his responsibility under the regulations, noting that he had to consider opinion evidence in accordance with, among other things, 20 C.F.R. § 404.1527. (PageID.64.). The ALJ adequately considered the factors regarding the opinion evidence, and specifically considered the doctors' opinions against the record as a whole. (PageID.64). The ALJ found that the proffered restrictions

---

[3]Lyrica is an anti-convulsant medication sometimes used to treat back pain and chronic pain. Judith Frank, *Lyrica (Pregabalin)*, SPINE-HEALTH, http://www.spine-health.com/treatment/pain-medication/lyrica-pregabalin (last visisted June 15, 2016).

11

listed in their opinions were not well supported by objective evidence and in doing so expressly considered several of the factors, including the Plaintiff's daily activities, supportability, and treating relationship. In this, the Court finds no error.

**2.**

On August 9, 2013, Dr. Tama Abel, a consultative examiner, examined Plaintiff and filled out a medical source statement regarding Plaintiff's physical limitations. (PageID.693–99.) Among other things, Dr. Abel found that Plaintiff could only sit, stand, or walk for ten minutes at any one time, and could only sit, stand, or walk each for a total of four hours in an eight hour workday. (PageID.694.) Furthermore, Plaintiff could only occasionally reach, handle, finger, feel, push, or pull and could never operate foot controls. (PageID.695.) The ALJ's decision does not contain a discussion of this opinion. Plaintiff argues that because Dr. Abel's opinion was more restrictive than the RFC, the ALJ committed a harmful error by failing to discuss the opinion. (PageID.801–802.) The Court finds no error requiring reversal.

It is true, as Plaintiff points out, that the regulations state that the Commissioner will evaluate every medical opinion she receives. 20 C.F.R. §404.1527(c). But the opinions of a consultative examiner are not entitled to any particular weight. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Further, it is well established that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010); *Decheney v. Comm'r of Soc. Sec.*, No. 1:13–cv–1302, 20145 WL 4526836, at * 9 (W.D. Mich. July 27, 2015).

The Court finds any error here to be harmless. As the Commissioner points out, Dr. Abel offered her opinion on August 9, 2013, a date more than three years after Plaintiff's date last insured of March 31, 2010. While the form Dr. Abel filled out included a space for the doctor to provide a date in which Plaintiff's limitations were first present, Dr. Abel left that space blank, thus indicating that her opinions were regarding Plaintiff's current limitations on August 9, 2013 only. (PageID.698.) "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since Plaintiff's insured status for purposes of receiving DIB expired on March 31, 2010, he cannot be found disabled unless he can establish that a disability existed on or before that date. *Id.* "Evidence relating to a later time period is only minimally probative." *Jones v. Comm'r of Soc. Sec.*, No. 96–2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997) (citing *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). In addition, evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Here, Dr. Abel's assessment is irrelevant, because it does not address Plaintiff's condition as it existed on or before his last insured date of March 31, 2010. This claim of error will be denied.

**3.**

Plaintiff next claims that the ALJ's RFC discussion was "vague" and violated SSR 96-8p's narrative discussion requirement. He further claims that the "ALJ failed to cite to *any* specific medical evidence, nor did he rely on any persuasive non-medical facts that supports [sic] the light RFC finding." (PageID.803.) (emphasis in original). The Court disagrees. According to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence

13

supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).[4] The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source . . . explain why the opinion was not adopted." *Id.*

The portion of the ALJ's opinion dealing with the RFC assessment spans six pages and includes a summary of Plaintiff's testimony regarding his disabling limitations, the ALJ's credibility analysis, and a brief summary of the opinion evidence. (PageID.60–65.) The ALJ summarized the medical evidence as follows:

> Prior to the date last insured the claimant had minimal findings of diagnostic testing, had relatively normal physical exams, had a positive response to conservative treatment with minimal medication and physical therapy, did not require nor was he recommended for surgical intervention, did not require emergent care or hospitalization for pain exacerbation and did not require the use of an assistive device for ambulation.

(PageID.63.) With that in mind, the ALJ went on to note that Plaintiff had the RFC with the above listed limitations. (PageID.63.)

The Court finds this narrative, combined with the detailed discussion of the medical evidence, to be sufficient and moreover finds that substantial evidence supports the ALJ's RFC

---

[4]SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 549) (citations omitted).

decision. While Plaintiff would apparently prefer a more detailed analysis, that is not what is required by the Sixth Circuit. *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (finding that SSR 96–8p does not require ALJ's to produce a detailed function by function statement in writing). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548. (citation omitted); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013) (SSR 96–8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports h[is] conclusions"). The ALJ discussed the evidence of record at length and explained how it supported his factual finding regarding Plaintiff's RFC. In so doing, the ALJ satisfied the discussion requirements. *See Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (finding the discussion element satisfied by analyzing medical evidence and assessing credibility); *Blevins v. Astrue*, No. 4:08–CV–87–PRC, 2009 WL 2778304, at *14 (N.D. Ind. Aug. 31, 2009) (same). Plaintiff's claim of error is accordingly rejected.

**4.**

At the administrative hearing, Plaintiff testified that he was far more limited than the ALJ recognized. He testified that he could only sit and stand for ten to fifteen minutes without having to shift positions, and could only walk at a slow pace for twenty to thirty minutes. (PageDI.84–85.) He also testified that he couldn't work even if he was given an at will sit/stand option as he'd need to rest or recline as well. (PageID.101–02.) While he stated he played golf, he could only play three to four holes before he would become tired and have to leave. (PageID.103.) The ALJ discounted Plaintiff's subjective allegations. (PageID.61.) Plaintiff asserts that he is

entitled to relief because the ALJ's rationale for discounting his allegations is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also, Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also, Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

16

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also, Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x. 508, 511 (6th Cir. 2013) (citation omitted).

Plaintiff claims that in discounting his subjective statements, the ALJ mischaracterized the record. The Court disagrees. In his credibility discussion, the ALJ noted:

> [T]hrough the date last insured, the claimant did not require surgical intervention nor did any of his treating physicians recommend surgery. In addition, the claimant was able to golf when he received injections and stated it would help his back along with the walking he did when he played a round of golf (testimony.) The claimant is currently treating conservatively with pain medications, exercises and stretching, which have been relatively successful in managing his condition. Moreover, while the evidence shows some degeneration, a more recent lumbar Magnetic Resonance Imaging (MRI) from February 2012 noted fairly stable degenerative changes and no canal stenosis.

(PageID.61.) The doctor's reasons are well supported. For example on May 21, 2009, Dr. Alain Fabi co-signed a statement that diagnosed Plaintiff with musculoskeletal low back pain, as well as some nerve issue in the right leg and numbness in the right toe. (PageID.651.) The physician noted

17

that Plaintiff had undergone an MRI showing "mild degenerative disk disease at best" and concluded that he found "no issues whatsoever involving the back to suggest that any surgical approach would be warranted." Instead the physician advised injection therapy and physical therapy. (PageID.651.) It was not in error for the ALJ to describe this treatment, as opposed to surgery, as "conservative." *See Niemasz v. Barnhart*, 155 F. App'x 836, 837 (6th Cir. 2005) (describing pain medication and physical therapy as conservative treatment). Moreover, it appears Plaintiff experienced great relief with this conservative treatment. Treatment notes from June 2009 described Plaintiff has having a "good benefit" from the injections and feeling "markedly better." (PageID.490.) He described being able to be more active, which, as noted above included telling treaters in April 2009 and May 2011 that he was able to play nine holes of golf. To the extent Plaintiff argues he can only play three to four holes of golf, the undersigned notes that such testimony appears to have concerned the summer of 2013, well after his date last insured, and in any event the ALJ was allowed to resolve this inconsistency. (PageID.103.) Finally, a February 29, 2012, MRI found "stable" degenerative changes compared to an April 9, 2009, MRI. There was no significant lateral recess, neural foraminal or canal narrow. (PageID.756.) All this provides substantial evidence supporting the ALJ's decision. Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.** A separate judgment shall issue.


Dated:  June 22, 2016                              /s/ Janet T. Neff
                                                   JANET T. NEFF
                                                   United States District Judge